Randall DIXON *v.* STATE of Arkansas

CR 80-42                                    597 S.W. 2d 77
Supreme Court of Arkansas
Opinion delivered April 21, 1980

*McArthur & Lassiter,* P.A., by: *William C. McArthur,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

JOHN F. STROUD, Justice. Appellant was charged with battery in the first degree on January 17, 1979, in the beating of his fiancee, Rebecca Newman. When she eventually died 12 days later, the charge was amended to murder in the second degree. On September 18, 1979, after entering a plea of not guilty, appellant was tried before a jury, found guilty of manslaughter, and sentenced to ten years imprisonment.

Alleging two points for reversal, appellant brings this appeal. Finding no error, we affirm.

The appellant and Becky had lived together for several months, but on January 16, 1979, they made a decision to marry in the near future. They went to a bar in Little Rock that evening to celebrate and were joined by appellant's sister and other friends. When Becky asked an acquaintance to dance with her, the appellant became jealous and went home. Eventually at Becky's request, appellant's sister called him and he agreed to return. When he entered and saw Becky again dancing with the other man, he charged onto the dance floor and knocked her down. One of the waitresses said he hit her with his fist and it could be heard all over the bar. After appellant was ejected, appellant's sister left and took Becky home with her. After a couple of phone calls between appellant and Becky, he showed up around midnight and proceeded to slap her around. He cursed her, knocked her down several times and one time she hit her head on the coffee table, and another time may have hit her head on a stereo. Appellant's 13 year old niece and her girl friend were at the apartment and testified that Becky had bruises all over her face, that her eyes were black, her jaws were swollen and her nose was bleeding. The friend said she heard Becky beg appellant to stop hitting her, and she called the police at Becky's request. At one point Becky passed out and appellant told his sister to call an ambulance. She revived while he was giving her mouth to mouth resuscitation, and the ambulance was called off.

Appellant left and took Becky home with him about 1:30 or 2:00 on the morning of January 17th. At 7:30 he called Becky's place of work and told them Becky had the flu and would not be in for a couple of days. In his written statement, appellant said he went back to sleep and woke up about 10:00 or 10:30 when Becky wet the bed. When he could not rouse her, he called an ambulance. In response to a question from the ambulance attendant, he said he last hit her about 5:00 in the morning. Becky never regained consciousness, but with the aid of a respirator remained alive until January 29, 1979. The Chief Medical Examiner for the State of Arkansas performed an autopsy and testified that she died of cranial

cerebral injuries. In addition to three large bruises on her chest, two large bruises on her lower back, and internal bleeding of her eyes, she had bleeding in the muscle which covers the skull. He explained that the contusion of the brain caused it to swell, shutting off the blood supply, and that her brain was dead for at least 10 days before her death.

Appellant first contends that the trial court erred in restricting the testimony of appellant's expert witness concerning the cause of damage to the deceased's brain. It was stipulated that Dr. Douglas A. Stevens was an expert in the field of clinical psychology, having a Ph.D. in psychology, but he admitted that he was not a psychiatrist or medical doctor. The prosecuting attorney objected to the testimony of Dr. Stevens that the contrecoup phenomenon is when one side of the head is struck, damage to the brain can occur on the opposite side when the brain bounces off the inside of the skull. Appellant's attorney insisted that the proffered testimony was not in the field of medicine, but in the field of neuropsychiatry. The trial court held that Dr. Stevens had not qualified himself at trial as an expert in that field, but certainly nothing prevented him from attempting to demonstrate those qualifications following the court's ruling. The testimony was apparently offered in an effort to show that the fatal blow may have been from striking the coffee table, rather than from the fist directly, on the theory that the jury might find the injuries accidental. It is well-settled that the determination of the qualifications of an expert witness lies within the discretion of the trial court, and his decision will not be reversed unless that discretion has been abused. *U.S. Fidelity v. Smith,* 252 Ark. 556, 480 S.W. 2d 129 (1972). We find no abuse of discretion here.

Appellant also contends that the evidence was insufficient to support the verdict of guilty as to the offense of manslaughter. Ark. Stat. Ann. § 41-1504 (Repl. 1977) provides, in part:

(1) A person commits manslaughter if:

(a) he causes the death of another person under circumstances that would be murder, except that

he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse.

. . .

(c) he recklessly causes the death of another person.

Ark. Stat. Ann. § 41-1503 (1) (Repl. 1977) provides:

(1) A person commits murder in the second degree if:

(a) with the purpose of causing the death of another person, he causes the death of any person; or

(b) he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or

(c) with the purpose of causing serious physical injury to another person, he causes the death of any person.

As the jury found appellant guilty of manslaughter, they must have found either that appellant caused the death of his fiancee under circumstances that would be murder except for extreme emotional disturbance on his part or that he recklessly caused her death. Appellant maintains that his unstable emotional and physical condition at the time of the beating rendered him incapable of forming any of the culpable mental states required by § 41-1503 (1) or § 41-1504 (1) (a) and (c). These statutes require, in the various subsections, conduct of a purposeful, knowing or reckless nature. Ark. Stat. Ann. § 41-203 (Repl. 1977) defines these mental states as follows:

(1) "Purposely." A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

(2) "Knowingly." A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

(3) "Recklessly." A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

On appellate review, it is firmly established that we consider only that evidence which is most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. *Milburn* v. *State,* 262 Ark. 267, 555 S.W. 2d 946 (1977); *Pope* v. *State,* 262 Ark. 476, 557 S.W. 2d 887 (1977). We think the evidence was more than sufficient to support a conviction for manslaughter under either § 41-1504 (1) (a) or § 41-1504 (1) (c). The fact that appellant beat Becky intermittently over a period of several hours evidenced his intent to cause her serious physical injury. Appellant told a member of the ambulance crew that the last time she had been hit was around 5:00 a.m., which was well after appellant had beaten her into unconsciousness at his sister's apartment. The fact that he asked his sister to call an ambulance at that point indicated his awareness that she had already suffered very serious physical damage; nonetheless, he continued to beat her after they went home. In the alternative, there was certainly an abundance of evidence to indicate that he recklessly caused Becky's death. Accordingly, we affirm the jury's verdict of guilty as to the offense of manslaughter.

Affirmed.