Jimmie WILBURN *v.* STATE of Arkansas

CR 86-7                                          711 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered June 9, 1986

*William R. Simpson, Jr.*, Public Defender, *Arthur L. Allen*, Deputy Public Defender, and *Jerry Sallings*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant was convicted of first degree murder and sentenced to life imprisonment. He alleges three errors: (1) that he was improperly denied the opportunity to present certain expert testimony; (2) that evidence of a juvenile conviction was improperly admitted; and (3) that the prosecutor was allowed to make an improper and prejudicial

remark on closing argument. We find no merit in these contentions, and thus we affirm.

The appellant confessed to having killed his former employer. The killing occurred in April, 1984. The decedent had discharged the appellant from his job in 1981, and the evidence showed the appellant had harbored a grudge through ensuing marital and financial hard times. He went to his former place of employment with a pistol and shot the victim five times. In his statement, he admitted to having gone to the scene to do some bodily harm to the victim, and ultimately the appellant said he guessed he wanted to kill the victim.

## 1. Expert Testimony

As he admitted having done the killing, the appellant's evidence was aimed at convincing the jury he should be convicted of an offense other than the capital murder with which he was charged. He hoped to show he should be convicted only of manslaughter because he had caused the death "under circumstances that would [have been murder but for] . . . the influence of extreme emotional disturbance for which there is a reasonable excuse." *See* Ark. Stat. Ann. § 41-1504(1)(a) (Repl. 1977). To demonstrate his mental condition the appellant proffered the testimony of Dwight Merritt, director of the Little Rock Veterans Counseling Service. Merritt was prepared to testify as to the symptoms of post-traumatic stress syndrome. While Merritt had not counseled the appellant, the appellant wanted Merritt to be allowed to give his opinion about the effects the appellant's combat experiences in Vietnam could have produced on his mental state. Merritt's opinion was to have been based on records of counseling the appellant received from 1981-1983 at the counseling center operated by Merritt.

When the evidence was proffered, a long discussion among the court and counsel, out of the jury's presence, occurred. Ultimately, the court suggested the appellant's counsel place Merritt's proffered testimony on the record. Appellant's counsel asked Merritt if, on the basis of the veterans center records, he could say if the appellant was under the influence of extreme emotional disturbance during the time he was being counseled. Merritt said the appellant was under such influence and that it was not the sort of disturbance likely to disappear rapidly. The

court ruled that, although Merritt could testify as to the literal contents of the center's records, he would not be allowed to give such a diagnostic opinion. He said (1) the records upon which Merritt's opinion was based were too remote in time from the offense, and (2) while Merritt had demonstrated his qualifications as a social worker, he was not a doctor qualified to make a medical diagnosis on the basis of the records.

When the trial resumed, the appellant did not put Merritt on the witness stand but called Ken Stout, a readjustment counselor assistant at the center. Stout testified as to the contents of the records pertaining to the counseling of the appellant at the center. He was allowed to testify about the code markings placed on the records by the counselor who worked with the appellant, but while they showed areas of concern, such as alcohol and drug abuse, they showed nothing about the appellant's contention of extreme emotional disturbance at the time the counseling occurred.

The test as to whether a witness qualifies as an expert is whether, on the basis of his qualifications, he has knowledge of the subject at hand which is beyond that of ordinary persons. *Dildine* v. *Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984). We will not reverse the trial court's determination absent a showing of an abuse of discretion. *Dixon* v. *State*, 268 Ark. 471, 597 S.W.2d 77 (1980).

The question here is simply whether Merritt, who was concededly an expert in the field of social work, was qualified to diagnose the appellant's mental condition. The appellant cites us to the legislative definition of the "practice of social work." Ark. Stat. Ann. § 71-2803(b) (Supp. 1985). It says, in its most relevant part, that social work is "a professional service which effects change in social conditions, human behavior and emotional responses of individuals." The statute cited says nothing about diagnosis.

In *Robinson* v. *State*, 274 Ark. 312, 624 S.W.2d 312 (1981), we held the court did not err in refusing to allow a psychological examiner to give an expert opinion as to the mental condition of an accused. We cited the statutes defining the roles and responsibilities of variously qualified psychologists and noted that nothing in the statutes clearly said that a psychological examiner was

qualified to offer his own opinion on mental illness absent supervision by a consulting or clinical psychologist. We held there, as we do here, that the trial court did not abuse his discretion in refusing the evidence proffered.

## 2. The Juvenile Record

The wife of the appellant testified first for the state and was then called as a defense witness, whereupon she was asked if she were aware of the appellant's "ever having been convicted of a crime." She answered "no." Before cross examination, counsel approached the bench, and the prosecutor told the court he planned to ask whether the witness knew the appellant had been sent to the training school for burglary when he was fourteen or fifteen years of age. The appellant's counsel objected, contending he had not opened the character of the appellant to cross examination and that juvenile offenses are "off limits." The court ruled that the defense had inquired as to the appellant's character and that a general question about the incident would be proper. The prosecutor asked if the witness knew that as a juvenile the appellant was convicted and sent to Boys' Training School. She replied "yes."

■ Uniform Rule of Evidence 609(d) precludes use of a juvenile adjudication to attack the credibility of a witness. The appellant concedes that rule does not apply here, as it applies only when the witness is being examined about his own prior convictions rather than those of the accused. Uniform Rule of Evidence 609(a); *Reel* v. *State*, 288 Ark. 189, 702 S.W.2d 809 (1986).

■■ Rule 405(a) deals with methods of proving character. It says that on cross examination a character witness may be asked about relevant specific instances of conduct. We pointed out in *Reel* v. *State*, *supra*, that if a witness does not know about a specific instance her credibility suffers. If she knows but disregards it, that may go to the weight to be given the character witness's opinion of the accused. We also noted we would not, by analogy, import a limitation appearing in Rule 609 into Rule 405. We held that by producing a character witness the appellant had opened the door to evidence which might otherwise have been inadmissible.

While the facts before us now are different, the principle we

enunciated in *Reel* v. *State, supra*, applies. The witness gave no opinion as to the character of the appellant, but she was asked if she knew of his having ever been convicted of a crime. The only purpose that question could have had was to show the appellant was a person not disposed to commit crimes. She was thus a character witness. The door was open. The appellant's argument is essentially that with respect to juvenile adjudications the door is never open because of Ark. Stat. Ann. § 45-444 (Repl. 1977) which provides:

*Evidence not admissible in other courts—*

No evidence adduced against a juvenile in any proceeding under this Act [§§ 45-401—45-449], nor the fact of adjudication or disposition, shall be admissible evidence against such juvenile in any civil, criminal, or other proceeding. Provided: such evidence shall be admissible, where proper, in subsequent proceedings against the same juvenile under this Act.

We can ascertain from the record that the incident with respect to which the witness was questioned occurred long before 1975, the year Act 451 containing the above quoted section was passed. Even if the statute applies to the "conviction" to which the cross examination was directed, it does no more than make it inadmissible. Certainly the state could not have elicited the testimony on direct examination. Our point here, however, is that by asking a question going to the appellant's character, the appellant's counsel made admissible that which would not otherwise have been admissible.

We applied the same principle in *Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984), a civil case in which damages were awarded as the result of a shooting incident. The appellant testified on direct examination that he had never shot at anybody and had never had any problem in his life other than a speeding ticket. The arresting officer then was allowed to testify that the appellant had a reputation for violence when he was drinking. Had that evidence been offered by the state before the appellant gave character testimony, it would clearly have been inadmissible. *See* Rule 404(a)(1). However, we said, "[w]hen a proponent opens the door to a line of questioning, the opposing party may fight fire with fire by introducing rebuttal testimony on that

issue." 283 Ark. at 33, 670 S.W.2d at 449.

### 3. Closing Argument

In his closing argument the prosecutor said this to the jury:

> . . . In opening statement, the defense attorney also told you that no one knows what happened out there that night, not us, not him, not his client, not you, not the court, not the police department, nobody. There's people that do. Von Andrews did and he's been killed to keep him from telling what he knows about it. The defendant does. He's told part of it but he's not going to tell us the rest. Common sense tells you, ladies and gentlemen, that actions speak louder than words. In fact, in Arkansas, I think it was a former politician that made the phrase, "Just because I said it doesn't necessarily make it so." And, ladies and gentlemen, just because the defendant said he didn't remember or didn't plan doesn't necessarily make it so. Intent in a criminal case is always circumstantial. You compare and contrast his actions with his statements. Let us remember, too, that in his statement, he finally does admit, "Well, I guess I went out there with the intent to do some bodily harm."
>
> I can say I don't mean to come over here and pick up this pen, but a person is presumed to know the consequences of their action. It's a purposeful act to pick that up, to pick up the copy, to pick up the paper. It's a purposeful act to go to the pawn shop and get your .44 caliber Magnum . . .

The appellant objected contending this argument shifted the burden of proof on the issue of intent from the state to the appellant. We have no quarrel with the notion that the burden may not be shifted or with the cases saying that would be a violation of the appellant's right to due process. *See Francis* v. *Franklin*, 471 U.S. ___, 105 S. Ct. 1965 (1985); *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). However, we do not believe the statement by the prosecutor had any such effect. The cases cited by the appellant dealt with improper instructions. Here we are concerned only with argument.

The argument could have been perceived by the jurors as

meaning that by going to the pawn shop to reclaim his pistol on the day of the killing the appellant exhibited forethought or a plan to kill the victim. The other inference, i.e., that the appellant killed the victim and therefore must have intended to do so was not necessitated by the prosecutor's language.

Our court of appeals was faced squarely with this problem in *Weddle* v. *State*, 15 Ark. App. 402, 695 S.W.2d 840 (1985). It was held, correctly, that when the court has told the jury, as it did in the case before us now, that it must decide on the evidence, that the lawyers' arguments are not evidence, and that the decision must be in accordance with the court's instructions, the argument did not have the effect of an instruction on the burden of proof.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The appellant argues the trial court erred in refusing to qualify Mr. Merritt, the Director of the Little Rock Veteran's Counseling Service, as an expert. The appellant sought to introduce testimony from Merritt to explain the symptoms of post-traumatic stress disorder (PTSD). One theory for the defense was that the accused was suffering from severe stress since his service in Vietnam and, therefore, the homicide was committed "under circumstances that would be murder but for the influence of extreme emotional disturbance . . .", i.e., manslaughter (Ark. Stat. Ann. § 41-1504(1) (a)).

The appellant has correctly stated that whether a witness qualifies as an expert is largely within the trial court's discretion, citing *Dixon* v. *State*, 268 Ark. 471 (1980). The decision of the trial court will not be reversed in the absence of abuse of such discretion. The appellant has cited the case of *Dildine* v. *Clark Equipment Co.*, 282 Ark. 130 (1984), for the proposition that a liberal interpretation should be given by the trial court in determining whether a witness qualifies as an expert. In *Dildine* the appellant brought a prcducts liability suit to recover for personal injuries sustained when he was thrown from a front end grain loader. At the trial, the court refused to allow the appellant's witness, Dr. Robert Mink, to testify as an expert. This

Court held that this case required reversal under U.R.E. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In reversing, we based our decision largely on the fact that Dr. Mink's background showed that he possessed significant experience and training in the field of mechanical engineering. In *Dildine*, the witness had a Ph.D., a masters degree in machinery design, and was the Chairman of the Engineering Department of A.S.U. We noted that there was no evidence to the contrary to show that the witness was not qualified to testify as an expert.

In the instant appeal, the witness had a masters degree in social work, had extensive training in stress disorders and had five years experience in counseling with Vietnam Vets who experienced symptoms of PTSD. Therefore, I think the trial court erroneously denied the appellant's request to qualify this witness as an expert. To hold otherwise would in fact render U.R.E. 702 meaningless and allow only educational achievement to qualify a witness as an expert. Without saying so it seems to me the majority opinion requires a witness in this field to possess a medical degree before he may testify as an expert.

It is my opinion that Mr. Merritt was qualified as an expert by knowledge, skill, experience, training and education. He should have been allowed to testify. The denial deprived the appellant of one of his best defenses, and amounted to an abuse of the trial judge's discretion.

I also agree with appellant's argument that any evidence that he was sent to a reform school as a juvenile should have been excluded. Arkansas Stat. Ann. § 45-444 specifically proscribes the introduction of a juvenile record in any civil or criminal proceeding, except other proceedings under the Act. Appellant's wife was a factual witness on behalf of the State. The defense also called the wife as a witness. She was not called as a character witness. As a defense witness she stated that she had been married to appellant since 1971 and that she was not aware that the

defendant had been convicted of any crime. During cross examination the State asked, "Are you aware of Jimmie ever having been convicted of a crime?" She replied, "No." The state was then allowed to ask the witness if she knew the appellant had been sent to the Boys Training School twenty-five years ago, at the age of 15. The witness replied, "Yes."

Arkansas Stat. Ann. § 45-444 (Repl. 1977), in pertinent part states, "No evidence adduced against a juvenile in any proceeding under this Act (45-401—45-449) nor the fact of *adjudication or disposition,* (emphasis added) shall be admissible against such juvenile in any civil, criminal, or other proceeding. . . ."

The state argues appellant invited the question by asking if the witness was aware of a prior conviction of the defendant. The state cites *Reel* v. *State,* 288 Ark. 189, 702 S.W.2d 809 (1986), as authority. I think *Reel* is inapposite because it dealt with testimony of a character witness pursuant to U.R.E. 405(a). In the case before us the witness had not given an opinion about appellant's reputation or truthfulness. We held in *Kellingsworth* v. *State,* 275 Ark. 252, 631 S.W.2d 1 (1982), that the state cannot, under the guise of rebuttal evidence, impeach a witness on a collateral matter. The reason for the rule, we stated in *Kellingsworth,* is that to permit such tactic would only distract the jury from the main issue, waste time and prejudice a defendant. In my opinion the state asked the question solely to prejudice the appellant before the jury. Furthermore, there is no evidence that appellant was ever convicted of a "crime." Twenty five years ago, when appellant was 15 years of age, juveniles were routinely sent to "training schools" upon request of a parent or other interested person.

The state is also in error in stating that U.R.E. 609(d) would allow the admissibility of the testimony in question. This rule states in part, "The Court may in a criminal case allow evidence of a juvenile adjudication of a witness *other than the accused . . . .*" (Emphasis added). The evidence here was that the *accused* had been adjudicated as a juvenile. The appellant himself, in the absence of Ark. Stat. Ann. § 45-444 and U.R.E. 609(d) might have been properly subjected to cross-examination. *Gustafson* v. *State,* 267 Ark. 278, 590 S.W.2d 853 (1979). Even then the probative value of such question must be weighed against

the prejudical effect. *Floyd* v. *State*, 278 Ark. 432, 645 S.W.2d 690 (1983).

For the reasons above stated I would reverse the case and remand it for a proper trial.