Vernon ROSS *v.* STATE of Arkansas

CR 89-63                                           779 S.W.2d 161

Supreme Court of Arkansas
Opinion delivered November 6, 1989

370

372

*W. Hunter Williams, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This is an appeal from the appellant's conviction of arson resulting in more than $100,000 in damages to the Osceola High School, three counts of burglary, and two counts of theft of property. Appellant was sentenced to serve a total of thirty-five (35) years in prison. On appeal, appellant argues twelve points of error. We find no error, and therefore affirm.

On December 2, 1987, around 1:00 a.m., a fire occurred at

the Osceola High School in Mississippi County, Arkansas. The fire destroyed 22,000 square feet of the school and caused extensive water and smoke damage in the remaining parts. The library (with its 7,000 volumes), the cafeteria and the administrative area of the school were all completely destroyed. When the fire was extinguished, it was determined that several different fires were intentionally set in the building. There was also evidence of vandalism found inside the school. A display case containing old football jerseys was broken and books were thrown around the class rooms. In addition, a break-in at the Osceola Athletic Complex was discovered. A window was broken out and articles of athletic equipment were stolen. On that same day, a garage owned by Joe Harris, Jr., was burglarized, and, among other things, a gun and disk camera were taken.

After the foregoing crimes but on the same day, Billy Wright reported to the police that the appellant, Vernon Ross, and Jerry Walker had been to his trailer that morning bragging and laughing about burning down the high school. Wright told the police that these men had with them a gun, a disk camera and a bag containing athletic equipment, and they had left these objects in his trailer. Walker attempted to sell Wright the gun and admitted that it belonged to Joe Harris. Wright had used the camera to take pictures of Walker and Ross. The police went with Wright to retrieve the stolen objects from his trailer. The film in the camera was developed, and the appellant and Walker were identified in the pictures. Eddie Green, who also had been present when the appellant and the others were at Wright's trailer, gave a statement which corroborated Wright's account. After arresting Walker, the police were informed that the appellant and Yulandia Carruthers were at the Judge Motel. The policemen knocked on the appellant's motel room at 7:30 a.m. on December 3 and identified themselves. The appellant opened the door and was told that he was under arrest. The police officers did not have an arrest warrant. The appellant was read his rights and was transported to the police station. At 8:55 a.m., the appellant gave the police a statement about the arson and theft at the high school and the burglary and theft at Joe Harris's garage. Carruthers also gave the police a statement in which she admitted driving the appellant and Walker to the high school.

■ Appellant first argues that the trial court erred in

denying his motion to suppress his statement because of the illegality of his arrest. A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed a felony. A.R.Cr.P. Rule 4.1. At the suppression hearing, the trial judge found that the police officers had probable cause to arrest the appellant. We agree.

Probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that a crime has been committed by the person suspected. *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988). The degree of proof sufficient to sustain a conviction is not required for probable cause to arrest. *Id.* All presumptions are favorable to the trial court's ruling on the legality of the arrest and the burden of demonstrating error rests on the appellant. *Munnerlyn* v. *State*, 292 Ark. 467, 730 S.W.2d 895 (1987).

In the present case, the police officers knew that the fire at the Osceola High School was arson and that the athletic complex had been broken into and equipment had been stolen. In addition, they knew that a gun and camera had been stolen from Joe Harris's garage. Billy Wright told the police that the appellant and Walker had bragged about burning the school and that they had a gun, camera and athletic equipment with them. According to Wright's statement, Walker admitted that the gun belonged to Joe Harris. Eddie Green, who was also present at the trailer, corroborated Wright's statement. The police retrieved the stolen property at the trailer and Harris identified the gun. The film in the camera was developed and the pictures were of the appellant and Walker holding the stolen gun. Clearly, the police had probable cause to arrest the appellant.

We also find no merit in the appellant's argument that *Payton* v. *New York*, 445 U.S. 573 (1980), dictates a finding that his arrest was illegal because the police entered his motel room. In *Payton*, two companion cases were heard by the Supreme Court involving police officers entering a suspect's home to make a warrantless arrest. One of these cases involved the police using crowbars to break into an apartment where no one was home. After breaking into the apartment, the police found a .30 caliber

shell casing which was used at trial against the defendant. The second case involved a young child opening the door for the police. Before the suspect was given a chance to object, the police entered the house and arrested him. The Supreme Court found both of these entries by the police unacceptable and held that the fourth amendment prohibited the police from making a warrantless and nonconsensual entry into the suspect's home in order to make a routine felony arrest.

■ Clearly, the facts in the present case are distinguishable from those in *Payton*. Here, the appellant, himself, opened the door dressed only in a sheet. While he denied inviting the officers in, he also never suggests that he asked them to wait outside while he got dressed. Furthermore, one of the policemen, Larry Robinson, testified that the appellant did invite them into his room. As we have said numerous times, conflicts in testimony are for the trial judge to resolve, and the judge is not required to believe any witness's testimony, especially the testimony of the accused since he is the person most interested in the outcome of the proceedings. *See, e.g., Huff* v. *State*, 289 Ark. 404, 711 S.W.2d 801 (1986).

■ We take this opportunity to dismiss two of the appellant's arguments concerning procedural aspects of his trial. Due to pretrial publicity, the appellant received a change of venue from the Osceola District of Mississippi County. In his motion for change of venue, the appellant, a black male, requested the trial be moved to Crittenden County, because it had a similar racial makeup as Osceola, where the crime occurred. The trial judge moved the trial to the Jonesboro District of Craighead County. Appellant made a motion for a second change of venue and presented statistical evidence showing the black and white population of the areas in question. He argued below, and now on appeal, that he was entitled to a change of venue to a district with a similar racial makeup as where the crime occurred. The trial court denied appellant's second motion. We summarily dismiss the appellant's argument, because he has failed to cite any authority to support his argument. This court will not consider arguments unsupported by convincing argument or authority. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977). Also, we note that the appellant failed to present evidence to the court which showed the number of black and white prospective jury

panel members. Concerning another procedural point, the appellant argues that the trial court erred in refusing his motion for a bifurcated trial. He argues that he should be entitled not to testify during the guilt phase of the trial without waiving his right to address the jury about punishment in the sentencing phase of the trial. Here, the appellant testified at the trial and addressed the jury about being sorry for any wrongs he had committed. We allow bifurcated trials in capital murder cases, DWI cases and cases involving habitual offenders. However, we know of no authority, and the appellant cites none, which would call for a bifurcated trial in this instance.

The next five issues we will address concern the appellant's conviction for arson. First, the appellant argues that the trial court erred in refusing three arson instructions that he proffered. In regard to the common law presumption against arson, these proffered instructions informed the jury that the school fire must be presumed accidental and that the state must prove that the fire was caused by a willful act. The trial judge instructed the jury using the model instructions on arson, which informed the jury that the state must prove that the appellant started a fire with the purpose of destroying or otherwise damaging a vital public facility. *See* AMI Criminal, 1902. Instructions which do not conform to the model instructions should be given only when the trial judge finds the model instructions do not accurately state the law or do not contain a necessary instruction on the subject. *Henderson* v. *State*, 284 Ark. 493, 684 S.W.2d 231 (1985).

We first note that the appellant did not abstract any of the jury instructions. This court does not require an appellant to abstract all of the instructions given by the court as predicate to objection on appeal to failure of the trial court to give an instruction proffered. *Newberry* v. *Johnson*, 294 Ark. 455, 743 S.W.2d 811 (1988); *Hunter* v. *State*, 8 Ark. App. 283, 653 S.W.2d 159 (1983). While we do not require the abstract of all of the instructions, it is necessary for the court to review the trial court's instructions on arson to determine if these instructions covered the common law presumption against arson. Further, the appellant fails to argue that the trial court's jury instructions on arson did not cover the issue contained in his proffered instructions. He alleges merely that his instructions are proper. Even if

the appellant's instructions were correct, it is not error for the court to refuse to give them if the other instructions given cover the issue. *Wallace* v. *State*, 270 Ark. 17, 603 S.W.2d 399 (1980). On the record before us, we cannot say that the trial court erred in refusing the appellant's jury instructions.

Next, the appellant argues that there is insufficient evidence to support his conviction of arson, Class Y felony. His main contention is that the state's case did not overcome the common law presumption against arson. In a related issue, he also argues that the school superintendent's testimony showing the amount of damage to the building was hearsay and should not have been admitted into evidence. Under Ark. Code Ann. § 5-38-301(a)(4) (Supp. 1987), a person commits arson if he starts a fire . . . with the purpose of destroying or otherwise damaging a vital public facility. Arson is a Class Y felony if any property sustains damage in excess of $100,000. Ark. Code Ann. § 5-38-301(b).

In order to overcome the common law presumption against arson, this court has stated that the state must prove not only the burning of the building, but the evidence must also disclose that it was burned by the willful act of some person criminally responsible for his acts, and not by natural or accidental causes. *Thomas* v. *State*, 295 Ark. 29, 746 S.W.2d 49 (1988). When reviewing the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the appellee, and the judgment must be affirmed if there is any substantial evidence to support the finding of the trier of fact. *See, e.g., Lane* v. *State*, 288 Ark. 175, 702 S.W.2d 806 (1986). At the trial, the state presented testimony from three experts concerning the cause and origin of the fire. One of these experts was Fred Hendrix, the fire chief of Osceola. Appellant argues on appeal that Hendrix was not qualified to testify as an expert on the point of origin and cause of the fire. While Hendrix admitted that he was not certified in cause and origin investigation, he had fifty-one years experience in fire fighting and had attended courses dealing with arson and the determination of cause and origin of fires. We dismiss the appellant's argument by stating that the determination of the qualifications of an expert witness lies within the discretion of the trial court, and its decision will not be reversed unless this discretion is abused. *Dixon* v. *State*, 268 Ark. 471, 597 S.W.2d 77 (1980). With Fire Chief Hendrix's fifty-one

years experience and training in fighting fires, we cannot say that the trial court abused its discretion.

In addition to Hendrix, Stephen Dozier, an investigator in the Arson Investigation Unit of the State Police and Robert Golson, a special agent with the Bureau of Alcohol, Tobacco and Firearms of the U.S. Treasury Department also testified for the state. They all agreed that several fires were intentionally set in the building by igniting piles of paper and books. Evidence of these fires was found in three or four locations in the school building. While the witnesses stated that they also believed a fire was set in the library, they could not positively identify the point of origin because the area was completely destroyed. In addition, Hendrix testified that the fire could not have started in the school's heating and cooling units located on the roof, because there was too much damage to the ground floor of the building.

Further evidence of arson was shown by policemen who testified about the vandalism inside the school and the break-in at the athletic complex. During this testimony a part of a broken stick and piece of garden hose that were discovered in Walker's car were introduced into evidence over the appellant's objection. The other part of the stick was found by a broken glass case inside the school building, and the piece of garden hose smelled like gasoline. In appellant's statement, he stated that the stick was used to break the glass case and that the section of the hose was used to siphon gasoline. The appellant argued below and on appeal that a chain of custody had not been established as to the broken stick and that the appellant had not consented to the search of the accomplice's, Walker's, car.[1] As to the search issue, the appellant simply has no standing to question the search of a vehicle owned by another person. *Tippitt* v. *State*, 294 Ark. 342, 742 S.W.2d 931 (1988). Regarding the chain of custody argument, it is only necessary for the trial judge, in his discretion, to be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986). The police officer testified that he

---

[1] The appellant also appears to argue below that the evidence is not relevant. Clearly, the evidence is relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice. A.R.E. Rule 403.

identified the stick, and the stick had an evidence tag on it with the officer's initials. Clearly the requirement of a chain of custody was met.

Undoubtedly, the state presented sufficient evidence to rebut the common law presumption against arson. The evidence set out above, along with the appellant's statement and testimony, clearly shows that the fire in the high school was intentionally set by Walker and the appellant.

Regarding the state's burden in proving the school building damage exceeded $100,000 (a Class Y felony), the state called Carroll Smith, the superintendent of the Osceola School District to testify. Smith testified without objection to the structural and physical damage done to the school, which included the loss of the library with its 7,000 volumes. Then, Smith was asked the total dollar amount of the damages to the school. After stating that he had been superintendent of the school district for three years, was the custodian of the records, and was the one responsible for letting and receiving the bids, Smith was allowed to testify that the total damage to the school and its contents was $1,380,504.09. Apparently, Smith obtained this figure for the total damages from a contracting bid for reconstruction of the school and from an insurance adjuster's file. Smith did not have any of the records with him in the courtroom.

The appellant argued below, and now on appeal, that Smith's testimony was hearsay and therefore inadmissible, because it was based on a contracting bid.[2] The state argues that Smith's testimony is admissible, because he is an expert pursuant to A.R.E. Rule 702, and therefore he can base his testimony on facts made known to him before the hearing. A.R.E. Rule 703. While arguably Smith might qualify as an expert because of his specialized knowledge of the value of Osceola High School and its contents from receiving and letting bids, we need not address that issue because of certain testimony solicited from the superinten-

---

[2] We also note the appellant's argument that the actual contract bid was needed under the best evidence rule. Because we conclude that there was other sufficient value testimony by Smith and that the appellant failed to show prejudice, we do not address this issue. In addition, we do not address the appellant's argument that Smith's testimony was erroneous under A.R.E. Rule 803(8)(iii), because it was raised for the first time on appeal.

dent on cross-examination. In the appellant's questioning of Smith about what was included in the contents of the school, the superintendent testified that it would cost $20.00 to $25.00 a volume to replace the 7,000 volumes that were destroyed. Appellant never questioned this value testimony, nor asked that it be stricken. From this testimony alone, there is proof that the damage to the school building and its contents exceeded $100,000. Most likely, appellant interposed no objections to Smith's testimony because, as a superintendent, he would be expected to possess the knowledge to testify about the cost of library books to a school. *See* A.R.E. Rule 701. In any event, with the value testimony solicited by appellant's counsel on cross-examination, we are unable to say that the appellant was harmed by allowing the superintendent to testify as to the school's total damages. This court will not reverse unless the appellant has shown prejudice. *See, e.g., Sutherland* v. *State*, 292 Ark. 103, 728 S.W.2d 496 (1987).

A similar argument was made regarding Coach Jim Hembree's testimony about the value of the athletic equipment stolen from the athletic complex. The state relied on Hembree's testimony to prove the appellant's charge for theft of property, a Class C felony. Theft of property is a Class C felony if the value of the property is less than $2,500, but more than $200. Ark. Code Ann. § 5-36-103(b)(2)(A) (Supp. 1987). After the football coach stated that he had twenty-three years experience in buying and acquiring athletic equipment, Hembree was allowed to testify, over the appellant's hearsay objection, as to what the equipment cost him four or five years ago and to its current replacement value. He stated that the value of the equipment stolen was $204.60 but that the replacement value would be much higher. Unquestionably, Coach Hembree had purchased the school's athletic equipment and was responsible for its replacement. The value opinion given by him was based upon his own experience and knowledge in purchasing such equipment. *See* A.R.E. Rule 701. We agree with the trial court that the football coach's knowledge of the value of the equipment stolen was sufficient to allow him to testify as to its value.

The next three issues also concern evidentiary rulings by the trial judge. First the appellant argues that the trial court erred in refusing to admit a psychological evaluation of Yulandia Car-

ruthers. Carruthers, who had driven the appellant and Walker to the high school on the night of the arson, testified for the state. During cross-examination, Carruthers admitted to having seen Dr. Martinez at the George W. Jackson Community Health Center, but she denied having made statements to Martinez about not remembering the events of the evening (or morning) when the arson occurred or not knowing of the plans to burn the high school. To show these statements were made to Martinez, the appellant called witness Jean Hambry, the medical librarian for the health center, to introduce Carruthers's medical report into evidence. The prosecutor objected to the introduction of the medical report, because he would not have the opportunity to cross-examine Dr. Martinez.

The trial judge denied the introduction of the medical record into evidence, but he instructed the jury that it could consider as evidence that Carruthers, in an interview with Dr. Martinez, had stated that she was too drunk to remember what happened the night of the fire and that she had no prior knowledge that appellant and Walker had plans to burn the high school. While we might agree with the appellant that the medical report was admissible under a hearsay exception, we need not address the point since any error by the trial judge would be harmless error. The appellant agreed to the trial judge's reading of Carruthers's inconsistent statements to the jury, and by this reading the appellant received the relief he sought. As we have stated numerous times, we will not reverse unless the appellant has shown prejudice. *Sutherland,* 292 Ark. 103, 728 S.W.2d 496.

Next, the appellant argues that the trial court erred in allowing the state to cross-examine the appellant about certain love letters written to Carruthers. During his testimony, appellant stated that he did not care anything about Carruthers. In order to impeach his statement, the state attempted to introduce the love letters he had written to Carruthers. The appellant objected stating that the letters were a surprise and that the state had failed to provide the appellant with copies of the letter pursuant to discovery rule A.R.Cr.P. Rule 17.1. The record shows that the appellant first became aware the state had the love letters during a pre-trial suppression hearing. The state withdrew its request to introduce the letters, but the prosecutor was later allowed to use the letters on cross-examination in his attempt to

impeach appellant's testimony on direct examination that "he never cared for her [Carruthers]." The prosecutor's use of the letters was certainly proper in this respect. Even so, the contents of the letters were never revealed to the jury, except the jury learned that the word "love" was used in several of the letters the appellant had written to Carruthers.

■ Finally, the appellant argues that the trial court erred in not allowing the appellant to introduce a copy of the judgment and sentence received by his accomplice, Jerry Walker. Walker did not testify at the trial. In *Robinson* v. *State*, 278 Ark. 516, 648 S.W.2d 444 (1983), we said that the sentence another defendant received is not relevant to guilt, innocence, or punishment, but that the sentence could be offered to show bias or prejudice of a witness. Since Walker did not testify, the trial court was correct in ruling that his sentence was irrelevant.

For the reasons stated above, we affirm.

DUDLEY, J., dissents.

ROBERT H. DUDLEY, Justice, dissenting. The majority opinion holds that the police may validly arrest a person in his motel room, even though the police do not have a warrant of arrest and there were no exigent circumstances.

"*Payton* v. *New York*, 445 U.S. 573 (1980), held that, absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment." *Welsh* v. *Wisconsin*, 466 U.S. 740 (1984). The Fourth Amendment protection extends to a hotel room which a defendant had permission to use. *United States* v. *Jeffers*, 342 U.S. 48 (1951). In this case, no exigent circumstances existed, and none are shown to have existed by the majority opinion.

The majority opinion suggests that the illegal arrest was validated because the defendant did not resist the entry by the police. The suggestion of consent is not well-taken. The mere submission to authority is not consent to an illegal arrest. Further, there is a presumption against the waiver of constitutional rights. *Johnson* v. *Zerbst*, 304 U.S. 458 (1938).

The arrest was illegal and the exclusionary rule should have been applied. Accordingly, I dissent.