Katherine Elizabeth WILLIAMS
*v.* SOUTHWESTERN BELL TELEPHONE COMPANY

94-682                                        893 S.W.2d 770

Supreme Court of Arkansas
Opinion delivered February 27, 1995

*Dewey Moore*, for appellant.

*Karen Queen Hare*, for appellee.

JACK HOLT, JR. Chief Justice. The appellant, Katherine Eliz-

abeth Williams, allegedly sustained injury to her wrist on a pay-telephone cord maintained by the appellee, Southwestern Bell Telephone Company ("Bell"), and brought suit against Bell in Pulaski County Circuit Court for personal injury. The jury returned a verdict in favor of Bell, and the trial court entered judgment accordingly.

On appeal, Ms. Williams furnishes to this court a limited portion of the record of trial, primarily pleadings, pretrial motions, and testimony of two witnesses, claiming that the trial court erred in permitting Bell to offer expert testimony relative to properties of the allegedly defective metal telephone cord at issue, or similar cords, while not permitting her an opportunity to examine and test a similar cord and present expert testimony. Bell responds by claiming that there was no final appealable order or ruling regarding the introduction of expert testimony and that the testimony of James Williams Jr. believed to be expert testimony for Bell was not, as the court ruled in its discretion, expert testimony. We agree with Ms. Williams that the trial court erred in permitting expert testimony after a ruling, in essence, that expert testimony was unnecessary; however, because she failed to object to similar testimony offered by another witness, we hold that the admission of Mr. Williams's testimony was harmless error.

In her complaint filed on November 7, 1992, Ms. Williams alleged that she was injured on November 11, 1989, when she attempted to use a pay telephone at the Junior League Baseball Field at Burns Park in North Little Rock. She claims that she severely cut her wrist on the metal cord which extended from the handset of the telephone, as the cord had apparently been stretched to expose a sharp-cutting edge. According to her complaint, Ms. Williams underwent surgery and was left with a permanent impairment. She alleged that Bell was negligent in permitting the telephone cord to remain in a defective and dangerous condition when it knew or should have known that it could have caused injury to her or to other members of the public. A jury verdict was rendered in favor of Bell.

Prior to trial, both parties directed interrogatories to one another. In answer to Ms. Williams's inquiry, Bell stated that the telephone cord at issue, along with the handset, had been removed

from the pay telephone in question on November 28, 1989, due to a report that the cord was frayed. As a result, a new cord had been put in its place and the old cord scrapped. Bell further responded that no inspection or testing had been done on the cord prior to its disposal.

In addition, Ms. Williams requested that Bell furnish to her the identity of each witness that it anticipated calling and to identify whether or not the parties would be called as expert witnesses and if so, to furnish the substance of the facts or opinions that he or she was expected to testify to, and the grounds for each opinion. Bell responded by stating that it would call James Williams, Jr. and Kurt Bender Jr., and that neither witness would be called as an expert.

On December 9, 1993, the trial court, after acknowledging an oral motion on the part of Ms. Williams, ordered Bell to check on the availability of a similar telephone cord, indicating that, after a telephone conference, it would advise the parties whether any testing could be done, and under what conditions. After Bell advised the court that it could produce a similar cord, the trial court directed that Bell produce such to Ms. Williams on the condition that no destructive testing be done unless representatives of all parties were present. No tests were performed.

On the same date, Bell filed a motion in limine requesting that the trial court prohibit Ms. Williams from offering expert testimony at trial due to the fact that she had not provided the name and address of an expert witness until three days prior to the trial date. Ms. Williams also filed a motion in limine asking that Bell be precluded from offering either testimony concerning the results of the testing of similar phone cords, if any, or "expert opinions" relative to properties of the cord at issue, or of similar cords.

At a pretrial hearing, the trial court made the following statement in response to the parties various motions:

> . . . I think I'll go on record as saying now what I said in the telephone conference, that is, I don't think this is — I think we'll get off on a tangent if we get off on expert testimony in this particular case. I think if we keep it within what the common, ordinary juror can understand. You got

a photograph of an outstretched cord there, you may have evidence of whether the telephone was operating or wasn't, that's certainly permissible, but she's going to testify she got hurt on it and we set out the standard of negligence, what the company owes patrons and the jury can decide whether they breached that, or whether the lady got hurt on this cord, things like that. I don't see this as, we can make it a complicated case, but I don't think it is.

It is also significant that, during the course of these proceedings and prior to the court making its remarks, counsel for Bell assured the court that she had no intention of putting on expert testimony.

Although the court did not issue formal written orders as to its rulings on the motions, when we examine its remarks, it is clear to us that in advising the parties that there would be no need for expert testimony at trial, its comments were tantamount to a ruling which is now a proper subject for appeal.

Ms. Williams asserts that the trial court committed error in permitting James Williams, Jr. to testify as an expert witness on behalf of Bell relative to the properties of the alleged defective metal telephone cord at issue. Mr. Williams, a customer service technician with Bell, testified that he had been with the company for 22 years, had worked on pay phones 18 of those years, and, particularly, that he had repaired pay telephones in the Burns Park area. The exchange in question involved Mr. Williams's testimony after he was shown pictures of the cord that were taken by Ms. Williams and her mother on the day after the incident, which had been admitted earlier as evidence. His testimony was as follows:

COUNSEL FOR BELL: Mr. Williams, I'd like you to look at those pictures and tell me, if you would, on Plaintiff's Exhibit 1A, there's a series of three pictures on front that show this telephone, first, I assume that's the Burns Park telephone we are talking about?

WITNESS: Yes, this is the one that was at the Little League baseball field.

COUNSEL FOR BELL: You are familiar with that and service it often?

WITNESS: Yes.

COUNSEL FOR BELL: Mr. Williams, is it your opinion, after twenty years of being a repairman, that that telephone would be operating?

WITNESS: No, not in the condition this phone cord is.

COUNSEL FOR BELL: Are you sure of that?

WITNESS: Positive because the middle cord was stretched, the wires inside will not stretch.

COUNSEL FOR BELL: Explain that.

WITNESS: The middle cord, it unravels, it will stretch out, but the wires are straight wires about three feet long and the cord originally is two feet eight inches.

COUNSEL FOR MS. WILLIAMS: At this point, I'll make my objection as to expert testimony on this cord.

COUNSEL FOR BELL: He's talking about his experience as a repairman.

COURT: Overruled.

Following the trial court's denial of Ms. Williams's objection, Mr. Williams testified as to both the length of the wires inside the cord and of the length of the original cord, and that in his opinion, there would be no dial tone on the pay phone if the cord were stretched out more than six inches than normal. Following Mr. Williams's testimony, Kurt Bender, Jr., Bell's area manager for pay telephones in Arkansas who had worked for the company for sixteen years, was also shown the pictures of the telephone cord, and offered similar testimony to that of Mr. Williams.

■ The test as to whether a witness qualifies as an expert is whether, on the basis of his qualifications, he has knowledge of the subject at hand which is beyond that of ordinary persons. *Wilburn* v. *State*, 289 Ark. 224, 711 S.W.2d 760 (1993); *Dildine* v. *Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984). Further, we will not reverse the trial court's determination on whether a witness qualifies as an expert absent an abuse of discretion. *Wilburn* v. *State, supra.* Stated another way, it is always discretionary with the trial court whether a person is qualified as

an expert in a particular field. *Robinson* v. *State*, 274 Ark. 312, 624 S.W.2d 437 (1981). Arkansas Rule of Evidence 702 governs the admission of expert testimony, and provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under the facts before us, we cannot agree with the trial court's finding that Mr. Williams was not testifying as an expert as he was offering his technical and specialized knowledge to assist the triers of fact to determine a fact in issue as to whether the telephone was capable of use at the time of Ms. Williams's alleged injury. In his opinion, "after 20 years of being a repairman," Mr. Williams based his testimony on specialized knowledge and experience as contemplated by A.R.E. 702.

The trial court's error, however, was harmless due to the fact that Ms. Williams did not object to similar testimony which was admitted, without objection, after that of Mr. Williams. Mr. Kurt Bender, who, as Bell's area manager for pay telephones, was in charge of installation, repair, and collection for over 14,000 units in Arkansas, had sixteen years with the company, offered similar opinion testimony as to whether this phone would have been operable during the time of Ms. Williams's alleged injury. We have stated that we will not find prejudicial error where the evidence erroneously admitted was merely cumulative. *Gibson* v. *State*, 316 Ark. 705, 875 S.W.2d 58 (1994); *Hooper* v. *State*, 311 Ark. 154, 842 S.W.2d 850 (1992). Stated another way, evidentiary error is harmless if the same or similar evidence is otherwise introduced at trial. *Shamlin* v. *Shuffield*, 302 Ark. 164, 787 S.W.2d 687 (1990). Here, Mr. Williams and Mr. Bender were separate witnesses and were qualified and questioned separately. Under these circumstances, we hold that the admission of Mr. Williams's testimony was harmless error.

Affirmed.

ROAF, J., not participating.