Shirley BRUMLEY *v.* James NAPLES

94-1194                                          896 S.W.2d 860

Supreme Court of Arkansas
Opinion delivered April 10, 1995

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *William L. Prewett*, for appellant.

*Schackleford, Schackleford & Phillips, P.A.*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Shirley Brumley, appeals an order of the Union County Circuit Court granting the motion of appellee, James J. Naples, for summary judgment and dismissing with prejudice appellant's complaint for malpractice and breach of contract. Our jurisdiction of the appeal is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(16) because it raises a question about the law of torts. Appellant raises five points for reversal. We find no error and affirm the trial court's judgment.

On July 7, 1988, appellee, a podiatrist, performed a surgical procedure to remove bunions located on the sides of appellant's feet. The procedure was performed at the New Boston General Hospital, in New Boston, Texas. After the procedure, appellant's left foot was improved, but she complained of persistent coldness and numbness in the great toe and second digit of her right foot.

On April 18, 1990, appellant filed an action for damages against appellee, alleging her injuries were caused by appellee's negligence in damaging the nerves of her right foot during the surgery.[1] Appellant's complaint set forth claims based on negligence in the surgery, lack of informed consent, and breach of contract. Appellee answered with a general denial of the complaint's allegations.

On April 20, 1992, appellee filed a motion for summary judgment based on appellant's failure to prove that appellee had acted outside the applicable standard of care. The motion was

---

[1] Appellant's then-spouse, Henry Brumley, originally joined in the complaint and prayed for damages for loss of consortium. However, by order filed March 24, 1992, Mr. Brumley's motion for nonsuit was granted.

supported by appellee's affidavit which incorporated several exhibits including appellant's answers to interrogatories, appellant's response to request for production of documents, appellant's deposition, and copies of the hospital's admission forms. Appellant responded that the motion was untimely inasmuch as discovery had not been completed and issues of fact remained; she attached her affidavit. Appellee's motion was denied.

On December 3, 1992, appellee renewed his motion for summary judgment and argued that appellant had failed to disclose an expert witness to establish that appellee had acted outside the applicable standard of care; the renewed motion adopted appellee's first motion. Appellant responded that appellee's deposition established a standard to advise a patient of risk and danger, and that issues of fact remained regarding the contract and lack of informed consent. Appellant's response was supported by appellee's deposition and correspondence regarding the injury to appellant's right foot. Appellee's reply denied the existence of any contract, and asserted that expert testimony, other than his own deposition, was required to establish a standard of care on the issues of negligence and informed consent.

By order filed April 28, 1993, the trial court found appellant had failed to disclose a "liability expert" except on the issue of informed consent, and granted partial summary judgment "as to all issues of liability except the issue of informed consent and breach of warranty and contract."

On March 29, 1994, appellee filed a second renewed motion for summary judgment, attached as an exhibit thereto the deposition of appellant's liability expert on the issue of informed consent, Mr. Luther Lewis, and argued the deposition failed to establish a fact question on that issue. The motion incorporated appellee's earlier motions. Appellant argued, in response, that Lewis was indeed an expert on the issue of the standard of care for informed consent.

By order filed September 6, 1994, incorporating a letter opinion dated August 16, 1994, the trial court found that it had instructed appellant by order filed February 16, 1993[2] to disclose

---

[2]Although appellant designated the order filed February 16, 1993 in her notice of appeal, she failed to abstract it for our review.

liability experts by March 29, 1993; that appellant had identified Lewis as an expert as to the issue of informed consent; that Lewis could not offer an opinion as to the proper standard of care for a podiatrist pursuant to Ark. Code Ann. § 16-114-206(b)(1) (1987); that appellant had failed to disclose any other liability expert; and, that appellee's motion for summary judgment as to "all issues of liability" was thereby granted and the complaint dismissed with prejudice. This appeal arises therefrom.

For reversal, appellant first argues that section 16-114-206, setting forth the burden of proof in medical malpractice actions, is unconstitutional. Our review of the abstract reveals that this issue was mentioned once before the trial court, to-wit, in her response to appellee's first motion for summary judgment, appellant stated: "Defendant argues that expert medical testimony is required in this case. If it were, the statute concerning actions for medical malpractice would be unconstitutional as legislation that is special, or class legislation." The abstract is otherwise devoid of any mention of this issue by either party or by the trial court.

██ On this record, we conclude that appellant's constitutional challenge was neither properly briefed nor argued to the trial court, and that the trial court made no ruling on appellant's objection. The burden of obtaining a ruling on this issue was on appellant; her failure to do so, leaving the issue unresolved, operated as a waiver of the argument on appeal. *Parmley* v. *Moose*, 317 Ark. 52, 876 S.W.2d 243 (1994). Further, the record reveals that no notice of appellant's constitutional challenge was given to the Attorney General pursuant to Ark. Code Ann. § 16-111-106 (1987), and, on that ground, we may choose not to consider the argument on appeal. *Reagan* v. *City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991).

Appellant's second argument is that the trial court erred in granting summary judgment because, on the proof presented, there was a genuine issue of material fact on the issue of informed consent. Appellee responds that he was entitled to summary judgment on this issue because section 16-114-206(b) required expert medical testimony to establish the applicable standard of care for disclosure and appellant failed to produce such testimony. Appellant argues that, viewing the proof in the light most favor-

able to her as the party resisting the summary judgment motion, this court must find that appellee made no disclosure of the risks of surgery, and, on such proof, evidence of a standard for disclosure is not required because absolute nondisclosure violates any disclosure standard.

The standard for our review of motions for summary judgment, as we have stated many times, is as follows:

> Summary judgment is a remedy that should be granted only when it is clear that there is no genuine issue of material fact to be litigated. [Citation omitted.] The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed in a light most favorable to the party resisting the motion. Any doubts and inferences must be resolved against the moving party. [Citations omitted.] The burden in a summary judgment proceeding is on the moving party and cannot be shifted when there is no offer of proof on a controverted issue. [Citation omitted.] When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing genuine issue as to a material fact. [Citation omitted.]

*Wyatt* v. *St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 551, 868 S.W.2d 505, 508 (1994).

Viewing the pleadings and evidence with respect to the informed consent issue in the light most favorable to appellant, we observe that in her complaint she alleged:

> The information furnished to [appellant] by [appellee] relative to the proposed surgery to be performed by him was not adequate whereby she could give an informed consent to the surgery. Had she been informed there was a danger of permanent crippling of her foot, she would not have consented to the operation. The defendant failed to advise her there would be any danger whatever in a loss of sensation or numbness in her foot as a result of the operation and, to the contrary, assured her it was a simple operation and there would be no danger.

In her deposition, appellant described two meetings she had

with appellee prior to her surgery. Their first meeting took place in appellee's office in June of 1988 when appellee initially examined appellant and recommended the surgery. In the deposition, when asked whether appellee explained any surgical procedure to her, appellant replied: "He just told me that he would remove those knots off of the sides of my feet, and he did not say anything about any pins or cutting any nerves in my toes or anything." Their second meeting took place in the hospital just prior to the time appellant was taken to surgery. In her deposition, appellant stated that appellee told her and her husband "the very same thing that he told me in his office that day, the first day I went to him." When asked whether appellee gave appellant any instructions about her care post-surgery, she answered in the negative, and added:

A. [H]e did not tell me that he was going to go in there and put pins in my feet or cut any nerves in my toes. All he was supposed to do was take those knots off of the sides of my feet.

Q. How did you think he was going to get the knots off the side of your feet?

A. He was going to cut them out.

At a later point in the deposition, appellant was asked if she had spoken to another doctor at the hospital on the day of her surgery, she replied:

A. I just can't remember. When I went over there that morning, I was scared to death because I didn't know what was going to happen to me. I've always been that way about hospitals.

Q. I understand. And you were scared to death and didn't know what was going to happen and still didn't ask Doctor Naples what was going to happen to you?

A. Well, Doctor Naples had told us that, you know, he'd explained the procedure to me twice, and he told me the same thing twice, and I just figured he knew what he was doing, and I didn't question him.

Finally, in her deposition, appellant stated that, on the day of the surgery, she signed without reading the hospital's disclo-

sure and consent form. This two-page document, subtitled "Medical and Surgical Procedures," was a preprinted form which included blank lines to permit the insertion of additional language. The document's stated purpose was "to make you better informed so you may give or withhold your consent to the procedure." It addressed risks and hazards of surgical, medical and diagnostic procedures generally. Additional handwritten language had been inserted identifying appellant's particular surgery and its particular related risks and hazards, including nerve injury. In the deposition, appellant stated that she did not believe the handwritten language was on the form at the time she signed it. The document stated that appellant had been given an opportunity to ask questions about the risks and hazards of the procedures to be used, and believed that she had sufficient information to give an informed consent.

■ We conclude that, although appellant asserts that absolutely no information regarding the risks of her surgery was disclosed to her, the pleadings and evidence, viewed in the light most favorable to her, do not substantiate her argument, but reveal that some information was disclosed. The informed consent issue then becomes whether the disclosed information was adequate to obtain appellant's informed consent. Adequate information, in the language of section 16-114-206(b), is:

(1) [T]hat type of information regarding the treatment, procedure, or surgery as would customarily have been given to a patient in the position of the injured person . . . by other medical care providers with similar training and experience at the time of the treatment, procedure, or surgery in the locality in which the medical care provider practices or in a similar locality.

(2) In determining whether the plaintiff has satisfied the requirements of subdivision (b)(1) of this section, the following matters shall also be considered as material issues:

(A) Whether a person of ordinary intelligence and awareness in a position similar to that of the injured person . . . could reasonably be expected to know of the risks or hazards inherent in such treatment, procedure, or surgery;

(B) Whether the injured party . . . knew of the risks or hazards inherent in such treatment, procedure, or surgery[.]

Adequate disclosure of the risks of a procedure is measured by the customary practice of physicians in the community in which the medical care provider practices or in a similar community. *Fuller, Adm'x* v. *Starnes*, 268 Ark. 476, 597 S.W.2d 88 (1980).[3] This standard of care applied even in a case arising from the physician's failure to disclose to the patient certain known risks associated with the use of Demerol prior to injecting her with the drug. *Id.*

The plaintiff's burden of proving the applicable standard of care and the defendant's failure to comply with that standard requires expert testimony when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge. *Reagan*, 305 Ark. 77, 805 S.W.2d 636; *Courteau* v. *Dodd*, 299 Ark. 380, 773 S.W.2d 436 (1989). In the present case, the trial court indeed required appellant to disclose an expert on the issue of informed consent. Upon its review of the deposition of appellant's disclosed expert, Lewis, the trial court determined that he could not offer expert testimony, as required by section 16-114-206(b), on the issue of informed consent. Absent expert testimony on this issue, the trial court concluded that appellant had not met her burden of proof and that no material issue of fact existed with respect to informed consent which required presentation of the case to a jury. We cannot say the trial court erred. *Reagan*, 305 Ark. 77, 805 S.W.2d 636; *Courteau*, 299 Ark. 380, 773 S.W.2d 436; *Fuller*, 268 Ark. 476, 597 S.W.2d 88; *see also* *Grice* v. *Atkinson*, 308 Ark. 637, 826 S.W.2d 810 (1992) (affirming judgment for defendant on directed verdict in dental malpractice case arising from failure to disclose risk of surgery).

Appellant's third argument is that the trial judge erred in granting summary judgment on her breach of contract claim because genuine issues of material fact exist concerning the existence and terms of the alleged contract between the parties.

---

[3] Although the facts in *Fuller* developed just prior to the General Assembly's adoption of section 16-114-206, we specifically stated in that opinion that our holding was consistent with the new legislation.

Viewing the pleadings and evidence with respect to the contract issue in the light most favorable to appellant, we observe that in her complaint, appellant alleged: "The defendant contractually agreed not to cause damage to her and assured plaintiff that his operation would correct the problems in her foot." No written agreement was alleged or appended to the complaint. In her affidavit, appellant stated: "I entered into a contractual agreement with Dr. Naples based upon his oral representations with me prior to the surgery. He breached that contract by failing to produce surgical results that were satisfactory, but that were, rather, incapacitating."

We observe, however, that in her deposition the following colloquy occurred between appellant and appellee's counsel:

Q. Did Doctor Naples make any guarantees or promises about his surgery?

A. What do you mean?

Q. Did he say, "I guarantee I can fix those feet," or "I promise that this will be the result"?

A. Well, no, he didn't guarantee anything. He just told me that my feet would be better. And my left foot is better, but my right foot is not.

In addition, we observe that the hospital's disclosure and consent form, which appellant signed without reading, contained the statement: "I understand that no warranty or guarantee has been made to me as to result or cure."

We conclude that, although appellant asserts that a contract or guaranty existed between the parties, the pleadings and evidence, viewed in the light most favorable to her, do not substantiate the existence of such an agreement. Hence, we find appellant failed to rebut appellee's prima facie establishment of entitlement to summary judgment by introducing proof that she and appellee made an enforceable agreement that would give rise to a cause of action for breach of contract or warranty. *See generally*, Jack W. Shaw, Jr., Annotation, *Recovery Against Physician on Basis of Breach of Contract to Achieve Particular Result or Cure*, 43 A.L.R.3d 1221 (1972 & Supp. 1994). On these facts, we cannot say the trial court erred in granting appellee judgment

as a matter of law on the breach of contract or warranty claim. *South County, Inc.* v. *First Western Loan Co.*, 315 Ark. 722, 871 S.W.2d 325 (1994). Any unresolved factual issues are therefore irrelevant, and the trial judge did not err in granting the motion for summary judgment on this claim. *Rainey* v. *Travis*, 312 Ark. 460, 850 S.W.2d 839 (1993).

Appellant's fourth argument is that the trial court erred in ruling that her witness on the issue of informed consent, Lewis, did not qualify as an expert. The determination of whether a person is qualified as an expert in a particular field rests within the discretion of the trial court. *Williams* v. *Southwestern Bell Tel. Co.*, 319 Ark. 626, 893 S.W.2d 770 (1995). The trial court's discretion in this matter is broad, and will not be reversed absent a showing of abuse. *Phillips* v. *Clark*, 297 Ark. 16, 759 S.W.2d 207 (1988).

The test of qualification as an expert is whether, on the basis of the witness's qualifications, he has knowledge of the subject at hand which is beyond that of ordinary persons. *Williams*, 319 Ark. 626, 893 S.W.2d 770. In the present case, the trial court rejected Lewis as an expert on the issue of informed consent for the following reasons as stated in its August 16, 1993 letter opinion:

> After fully reviewing his deposition, it is the opinion of the Court that Mr. Lewis candidly admitted that he did not have an opinion on the proper standards of care for a podiatrist as relates to disclosures and consent forms. Basically Mr. Lewis knows about the basics of informed consent, that is how to keep the records, and how and when to have them executed. But with respect to the type of information a podiatrist should tell a patient, or the content of the information, he was unprepared to offer an opinion on that. He was not prepared to answer any medical questions dealing with informed consent. On page 31 of his deposition, he stated "The medical complications and risks, I cannot tell you what the podiatrist should say." In the opinion of the Court this at [sic] the heart of the issue of informed consent. Therefore, the plaintiff must obtain an expert to testify as to these facts.

■ Our review of Lewis's deposition is consistent with the quoted summary by the trial court. On these facts, we cannot say the court abused its discretion in this matter.

Appellant's fifth and last argument is that appellee's deposition contained admissions that should have been accepted by the trial court as expert testimony on the issue of the disclosure standard for informed consent.

Appellant argued appellee's deposition was expert testimony on the issue of informed consent in her response to appellant's first renewed motion for summary judgment. In his reply, appellee argued that Ark. Code Ann. § 16-114-207(3) (1987), as interpreted by this court in *Prater* v. *St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987), controlled this matter and disallowed use of appellee's deposition for the purpose of establishing his failure to comply with the applicable standard of care. By order filed April 28, 1993, the trial court, without expressly ruling on appellant's argument, stated that appellant had disclosed an expert on the issue of informed consent, and reserved that issue from its grant of partial summary judgment. No appeal was taken from the April 28, 1993 order.

In his second amended motion for summary judgment, appellee identified Lewis as appellant's disclosed expert on the issue of informed consent. In her response to the second amended motion, appellant confirmed that Lewis was offered as a medical expert qualified to testify on the issue of the standard of care for informed consent. Appellant did not renew her argument that appellee's deposition was expert testimony on this issue, nor was the issue mentioned by the trial court in its order filed September 6, 1994 granting the second renewed motion for summary judgment and dismissing the complaint.

■ On these facts, we find appellant has failed to preserve this argument by obtaining and designating for appeal any ruling by the trial court on the issue of the use of appellee's deposition to establish the standard for informed consent. Hence, we do not address the merits of appellant's final argument.

Affirmed.

DUDLEY, J., not participating.