M. Munir ZUFARI, M.D., P.A. *v.* ARCHITECTURE PLUS, a Partnership, and Paul Hill, Michael G. Johnson, and Anthony Leraris

95-935                                    914 S.W.2d 756

Supreme Court of Arkansas
Opinion delivered February 12, 1996
[Petition for Rehearing denied March 18, 1996.*]

---

* JESSON, C.J., not participating.

412

*Bethell, Callaway, Robertson, Beasley & Cowan*, by: *Kenneth W. Cowan*, for appellant.

*Jones, Jackson & Moll*, by: *Mark Moll*, for appellees Architecture Plus, Michael G. Johnson, and Anthony Leraris.

*Warner, Smith & Harris, PLC*, by: *James M. Dunn*, for appellee Paul Hill.

ROBERT L. BROWN, Justice. Appellant Dr. M. Munir Zufari appeals a judgment barring his claim for breach of contract on limitations grounds. Zufari had sued appellee Architecture Plus and those persons who were partners during the time of the events in question — appellees Paul Hill, Michael G. Johnson, and Anthony Leraris. Zufari contends on appeal that the complaint was timely filed because the cause of action did not accrue until the project was substantially completed and, further, that the trial court erred in concluding that his request for arbitration was also barred by time. We disagree, and we affirm the judgment.

On August 3, 1993, Zufari filed his complaint against Architecture Plus and the other appellees. He alleged that on or about September 1, 1987, he and Architecture Plus entered into a contract where Architecture Plus would design a medical clinic which would contain an ambulatory surgical center. Under the terms of the agreement, Architecture Plus was to design the

facility according to Health Department regulations, prepare construction documents, and assist in the administration of the construction contract. The complaint asserted that after substantial completion of the facility, the Health Department refused to certify the project due to design defects. As a result, Zufari was forced to incur the additional expense of hiring another architectural firm to modify the design. The complaint further alleged that Zufari relied on Architecture Plus to make certain that the building complied with Health Department requirements. The complaint also contains a request for the trial court to order arbitration, as provided in the contract. In an amended complaint, Zufari sought damages in the amount of $114,742.38. Architecture Plus filed a counterclaim and alleged that Zufari owed it a balance of $9,874.95 for services rendered.

Architecture Plus and the appellee partners answered, raising the affirmative defense of statute of limitations, and moved to dismiss Zufari's complaint on the same grounds. A hearing was held on the affirmative defense, and proof was presented. Paul Hill, who was previously a partner in Architecture Plus, testified that his firm was hired by Zufari to construct the medical clinic and that the first design was completed on November 23, 1987, and submitted to the Health Department for approval. In a return letter dated December 4, 1987, the Health Department informed Architecture Plus that in order to license the facility, the design would have to incorporate these changes:

> 1. Flip-flop O.R. [operating room] and vascular lab.

> 2. Provide a sterile barrier and a traffic route for surgery personnel to get from street clothes, to a gowning space, and into the surgery corridor.

> 3. Smooth washable ceiling and walls in the anesthetizing location and in the surgery corridor. Lay-in ceiling is not permitted in the O.R.

> 4. Provide for dumping a bed pan without traveling through other functional areas.

> 5. Tell us how and where you will incinerate excised tissue.

> 6. Label preop and postop space.

7. Make the O.R. 250 square feet in area.

8. Provide a smoke barrier.

When you get your plumbing approval, this office approves construction to begin. Note that this does not constitute city approval. To be licensed and certified as an ambulatory surgery center, you must satisfy our requirements.

Zufari was shown as having been sent a copy of the letter. The court permitted Hill to testify about the contents of the letter over hearsay objections by Zufari.

Hill testified that the absence of a sterile corridor is what prevented the facility from being licensed. He further testified that Zufari was aware of the Department's rejection of the design in December 1987. Hill continued to communicate with the Health Department during the construction of the building. On December 22, 1987, Hill presented Zufari with a bill from Architecture Plus which showed that the design phase was 100% complete and that the construction documents and working drawings were 100% complete.

Hill also testified that on January 26, 1988, he submitted revised plans of the Zufari clinic to the Health Department in an effort to incorporate the required changes. These were the last plans that Hill prepared on the facility, although he made minor design changes later. Over Zufari's objection, the trial court admitted a reply letter from Glenn Anderson, a construction engineer with the Division of Health Facility Services of the Health Department. In the letter dated February 4, 1988, Anderson wrote:

We did fail to point out that the type construction required does include steel door frames. Steel door frames with an integral steel stop across the top and down both sides are required.

I have noted on my sheet A2 of eight (8) that Hall-10 (the surgery corridor) is "off limits" to the public and that the gowning alcove is just north of door 21B with scrub sink just south of that door in the surgery corridor.

We must have Dr. Zufari's written policy on how he

will get proper incineration of all infectious, pathological and anatomical waste before we can recommend licensing of his facility. He must also give us a signed agreement with a hospital that will give him back-up service.

A notation at the bottom of this letter showed a copy going to Zufari.

On September 22, 1988, Hill wrote Zufari that the project was substantially completed. The medical clinic had opened for business on September 16, 1988. Hill testified that Zufari had expressed dissatisfaction with his work during a walk-through of the facility in December 1988. On February 15, 1989, Hill left Architecture Plus, and Hill's work for Zufari ended.

Anthony Leraris, another partner with Architecture Plus, testified that Zufari's contract was a standard form contract used by the firm and that it contained an arbitration provision. Leraris testified that he never received any request for arbitration from Zufari. On March 15, 1989, Leraris wrote the director of the Health Department, Dr. Joycelyn Elders, and complained that Glenn Anderson had approved the plans for the Zufari medical clinic by letter dated February 4, 1988, but that his successor, Tom Saunders, had later denied them. In the letter, Leraris blamed personnel turnover in the department for the denial of the license. Leraris testified that he did not become aware of any problems until after the medical clinic was substantially complete. As Leraris understood the problem, the addition of steel doors to the substerile surgery corridor would have met the Health Department's demands. Zufari never consented to the addition of the steel doors, according to Leraris, and Hill never revised the plans to include steel doors.

The Health Department responded in a letter to Zufari dated March 30, 1989, regarding license denial:

Our office has reviewed our position regarding license denial at your facility and wish to offer further comments. We feel that the only subject sufficient to limit acceptance is the need for a distinguished sub-sterile (surgery) corridor. The surgery corridor must be physically separated by walls or doors from adjacent physician office space. The physical barrier with appropriate signage

allows the necessary limited access to the corridor and proper aseptic technique with regards to cross contamination.

Throughout correspondence in our files, there are references to the need for a sterile barrier before entering into the surgery corridor. Item #2 of our letter dated December 4, 1987 to Architecture Plus was the first reference.

Our letter to Architecture Plus dated February 4, 1988, reaffirms our position that the surgery corridor is to be "off limits" to the public. The "public" would be extended to be anyone not properly attired to enter the corridor. Due to the arrangement of the facility, the corridor can not be considered "off limits" properly without physical separation.

The trial court first refused to bar Zufari's complaint for limitations reasons. A motion for reconsideration was filed by the appellees, and after a second hearing, the trial court ruled that the statute of limitations did bar the cause of action for breach of contract. In its order, the court found that Zufari's cause of action against Architecture Plus accrued on December 4, 1987, when the Health Department initially rejected the design.

Zufari's first four points on appeal all relate to his claim that the trial court erred in dismissing his complaint on the basis of limitations. He argues that his complaint was timely filed under the statute of limitations codified at Ark. Code Ann. § 16-56-112 (1987). He further argues that notwithstanding the clear application of section 16-56-112, his complaint is also timely under Ark. Code. Ann. § 16-56-111(b) (Supp. 1995), because under the contract Architecture Plus was to guard against defects until issuance of the certificate for final payment or 60 days after substantial completion. Architecture Plus counters that § 16-56-111(b) applies exclusively, and that under that statute, the cause of action accrued on December 4, 1987, when the Health Department rejected the plans.

The first statute of limitations in question, § 16-56-111(b), reads:

(b) Actions on writings under seal shall be com-

menced within five (5) years after the cause of action shall accrue, and not afterward.

Ark. Code Ann. § 16-56-111(b) (Supp. 1995). Section 16-56-112 reads in part:

> (a) No action in contract, whether oral or written, sealed or unsealed, to recover damages caused by any deficiency in the design, planning, supervision, or observation of construction . . . shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction or repair of the improvement more than five (5) years after substantial completion of the improvement.
>
> . . . .
>
> (f) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any cause of action, . . . .

Ark. Code Ann. § 16-56-112 (1987).

This court had occasion to interpret § 16-56-112, as it related to other statutes of limitation, in *East Poinsett County School Dist. No. 14* v. *Union Standard Ins. Co.*, 304 Ark. 32, 800 S.W.2d 415 (1990). There, the issue was a breach of an oral contract to repair a gymnasium roof and the applicable statute of limitations. The plaintiff filed the complaint beyond the time of the 3-year statute of limitations for breach of an oral contract and sought to extend the limitations period by means of § 16-56-112. We stated:

> Before the enactment of § 16-56-112, a third party could sue architects and people in the construction and building field at any time after completion of work, so long as the third party brought suit within the applicable statute of limitations period commencing from when an injury or breach occurred. In recognition of this fact, states, including Arkansas, adopted statutes to limit the time within which actions could be brought against persons in the construction and building field.
>
> . . . .

Section 16-56-112, by its own terms, is not meant to extend existing statutes of limitations.

304 Ark. at 33-34, 800 S.W.2d at 417. Hence, we held that the three-year limitations period for oral contracts applied, as did § 16-56-112. We added:

But, in bringing such a suit, the injured party must still bring the action within the statute of limitations for that type of cause of action.

304 Ark. at 34, 800 S.W.2d at 417.

■ Section 16-56-111(b) is the applicable statute of limitations for written contract actions. *See Ernest F. Loewer, Jr. Farms, Inc.* v. *National Bank of Arkansas*, 316 Ark. 54, 870 S.W.2d 726 (1994). A written contract is what is involved in this case. In light of *East Poinsett County School Dist.*, the existence of § 16-56-112 does not extend the statute of limitations under § 16-56-111(b) or otherwise affect its applicability. We hold that § 16-56-111(b) is the applicable statute of limitations in the case before us.

■ The issue then becomes a factual one. Did Zufari's cause of action against Architecture Plus accrue before August 3, 1988, which was five years before his complaint was filed? We hold that it did. In routine contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. *Hunter* v. *Connelly*, 247 Ark. 486, 446 S.W.2d 654 (1969). The test for determining when a breach of contract action accrues is the point when the plaintiff could have first maintained the action to a successful conclusion. *Dupree* v. *Twin City Bank*, 300 Ark. 188, 777 S.W.2d 856 (1989). We stated in *Dupree*:

As we stated on the question of statute of limitations for contracts, a cause of action "accrues the moment the right to commence an action comes into existence." *Hunter* v. *Connelly*, 247 Ark. 486, 446 S.W.2d 654 (1969). And if the right of action depends upon some contingency or condition precedent, the cause of action accrues and the statute of limitations begins to run when the contingency occurs or the condition precedent is complied with.

300 Ark. at 191, 777 S.W.2d at 858.

■ Using these principles, the ultimate question to be answered in this case is whether the submission of the defective design on November 27, 1987, and its rejection by the Health Department on December 4, 1987, constituted a material breach. Section 2.3.2 of the contract states:

> 2.3.2 The Architect shall assist the owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the project.

This section requires the architect to assist in getting government approval of the project. Without approved plans, the facility would not be licensed, and without licensure, the ambulatory surgery center could not operate. *See* Ark. Code Ann. § 20-9-213 (Repl. 1991). Acquiring government approval was, therefore, a material element of the contract, and that approval was denied as of December 4, 1987, when the design work was 100% complete. When performance of a duty under a contract is contemplated, any non-performance of that duty is a breach. Restatement (Second) of Contracts § 235 (2) (1981).

■ We conclude that the trial court correctly found that the relevant date for accrual of the cause of action for breach was the date the plans were rejected by the Health Department — December 4, 1987. On that date, the cause of action was complete, and Zufari was entitled to sue for breach. He chose not to do so but, rather, chose to allow Architecture Plus to attempt to rectify the problem. The fact that Architecture Plus attempted to mitigate and correct the breach, however, does not alter the fact that a breach had occurred. Zufari did not file suit until August 3, 1993, and the applicable statute of limitations under § 16-56-111(b) had expired well before that date. Thus, the action was time-barred.

■ Zufari did object to the introduction of the Health Department's December 4, 1987 letter at the hearing on hearsay grounds, but the trial court admitted it under the business record exception to the hearsay rule. Architecture Plus concedes that this was error, but argues that the error was harmless. We agree with Architecture Plus that any error was rendered harmless,

primarily because admission of the letter was cumulative to other evidence admitted without objection. *See Luedemann v. Wade*, 323 Ark. 161, 913 S.W.2d 773 (1996); *Williams* v. *Southwestern Bell Tel. Co.*, 319 Ark. 626, 893 S.W.2d 770 (1995). For example, Hill testified that Zufari knew about the Health Department's rejection of the design work in 1987.

■ For his final point, Zufari urges that the trial court erred in concluding that Zufari's claim for arbitration was also time-barred. Zufari made a request for arbitration in his complaint dated August 3, 1993. Section 7.2 of the contract between Zufari and Architecture Plus provides:

> In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such a claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

Under our analysis, as set forth above, the request for the trial court to order arbitration was also late.

Affirmed.

JESSON, C.J., not participating.