Juanita Duke SHACKELFORD, Administratrix of the Estate of James Anthony Shackelford, Deceased *v.* Carrick H. and Pat T. PATTERSON, Husband and Wife; Arkansas Power & Light Company; John Doe 1, Electrician; and John Doe 2, Boat Hoist Manufacturer

96-178                                        936 S.W.2d 748

Supreme Court of Arkansas
Opinion delivered February 3, 1997

*McMath Law Firm*, by: *Mart Vehik*; and *Tapp Law Firm*, by: *Sky Tapp*, for appellant.

*Richard H. Wootton, P.A.*, by: *Richard H. Wootton*, for appellee.

ROBERT L. BROWN, Justice. This appeal is from an order of summary judgment in a wrongful-death and survival action brought by appellant Juanita Duke Shackelford, administratrix of the estate of James Anthony Shackelford (James), against appellees Carrick H. and Pat T. Patterson as well as Arkansas Power and Light Company (AP&L) and others. Summary judgment was granted in favor of the Pattersons, and an appropriate certification for purposes of appeal was made pursuant to Ark. R. Civ. P.

54(b). Juanita Shackelford contends on appeal that issues of material fact remain to be resolved regarding the death of her son, James, which renders summary judgment inappropriate. We agree that at least one material fact must be determined, and we reverse the order of summary judgment and remand for further proceedings.

On May 11, 1991, James and three teenage friends (Thomas James McDaniel, Larry Wayne Kennedy, and Joseph Faulkner) were in a canoe on Lake Hamilton in Garland County at about 11:30 at night. The boys attempted to shift position in the canoe, and it capsized. James told his friends that he would swim to shore, which was about 50 to 60 yards away, remove his clothes, and come back to help. Joseph Faulkner stayed with the other two boys, one of whom was in a life jacket, to assist them in swimming to shore. As the three boys made their way to shore, they heard James cry out for help.

When the boys came closer to land, they saw a boat dock and felt a tingling in the water, which they attributed to electricity. Faulkner testified in his deposition that this occurred 10 to 12 feet from the boat dock. The boys swam away from the electricity. McDaniel, who was in a life preserver, testified in his deposition that the tingling sensation "pulled the energy from you." Kennedy testified in his deposition that the electric current felt in the water was not strong but that they were "fixing to get in it," and that is why they swam away. When the three boys got to shore, they could not find James. They alerted the Pattersons, who resided in a house by the boat dock. The cause of death apparently was by drowning, with trauma caused by electric shock.[1]

In her first amended complaint, Juanita Shackelford sued the Pattersons for negligently installing electrical wiring to the boat dock which caused the wrongful death of her son. She alleged that a portion of the wiring cable had a cut in it and had dropped in the water and electrified both the water and the dock. She further asserted that the Pattersons knew they had electrical problems at the boat dock because electricity in the water had

---

[1] There is no autopsy report in the record of this appeal.

shocked a neighbor a year preceding James's death. Since they had knowledge of the danger, Shackelford alleged that the Pattersons were guilty of willful and wanton misconduct. She also claimed that Carrick Patterson was guilty of willful and wanton misconduct in wiring the boat hoist in violation of established standards.

The Pattersons moved for summary judgment on the ground that James was a trespasser on their boat dock at the time of his death and that no duty of care is owed to an unknown trespasser. Various affidavits and depositions were attached in support of the motion. Carrick Patterson averred in an affidavit that he had no notice James was on his property and no notice of an electrical problem prior to James's death except a year or two before the accident when the electrical outlet from shore was under water. In a later deposition, Carrick Patterson stated that he did the electrical wiring from the outlet on shore to the boat dock for the boat hoist. He also made repairs to the wiring. He stated that he never saw the wire or cable in the water on the night of the accident.

Joseph Faulkner testified in his deposition that Carrick Patterson told him the night James died: "You should have seen Aunt Ethel . . . when she got shocked out there about a year ago." Faulkner also testified in his deposition that he stuck his hand in the water after walking out on the boat dock and was shocked. Larry Wayne Kennedy confirmed that Carrick Patterson said that electricity previously had leaked from the outlet leading to the boat dock. He also related that when he touched the handrail on the boat dock, the electricity "knocked [his] arm off."

Shackelford's response to the summary-judgment motion was (1) the Patterson dock was a "use" and not a property right that would invoke landowner defenses; (2) if James was on the Patterson property, he was there by necessity, which triggers a duty of care owed by the Pattersons; and (3) it had not been proven that James actually reached the boat dock and died as a result of that as opposed to an electric shock in the water. In support of her response, Shackelford attached a report from the State Crime Laboratory which revealed a quarter-inch cut in the cable wiring that serviced the boat dock. The report also noted that the plug to the

cable contained a defect that caused a short circuit. The report concluded that the defect "could have caused considerable leakage of electrical current from the hot brown circuit wire into the neutral grounding wire." In addition, Shackelford attached the affidavit of Austin Bollen, an electrical engineer, who concluded that the energized ground wire coupled with the cut in the cable would cause electricity to leak into the lake, once it came in contact with the water. According to Bollen, the amount of electricity available for leakage would have been sufficient to cause death.

On the issue of whether the wire was touching the water on the night of James's death, Carrick Patterson stated in his deposition that he never saw the wire in the water. Pat Patterson related in her deposition that it was pointed out to her by one of the boys on the night of the accident that part of a wire was in the water off the gangplank. Larry Wayne Kennedy confirmed that the wire "looped down through the water."

The trial court granted summary judgment in favor of the Pattersons on the basis that they were the owners or occupants of the boat dock and that James was a trespasser on that dock. The trial court concluded that no duty of care was owed by the Pattersons to James because they did not know that he was on their property until after the occurrence.

Shackelford now contends on appeal that the trial court erred in granting summary judgment and assigns eight reasons for that error:

> (1) The Pattersons submitted no valid proof that James came in contact with the boat dock. Thus, landowner defenses such as James's alleged trespasser status do not come into play.

> (2) There is a disputed issue of fact on whether James received the fatal electric shock in the water or when he touched the boat dock. If he did not touch the boat dock, landowner defenses are not relevant.

> (3) The Pattersons' ownership of the boat dock is a non-possessory use on the lake and not a real property interest. Landowner defenses do not pertain to non-possessory usage.

(4) The Pattersons built the boat dock without a permit from the owner of the lake (AP&L), which makes them trespassers. Trespassers cannot claim a trespasser defense against third parties.

(5) Any entry by James on the Pattersons' property was due to necessity and, therefore, was privileged. His entry by necessity gives him the status of licensee. If the Pattersons should have known that he might be present on their property, they owed him the duty not to cause injury by willful or wanton misconduct.

(6) There is evidence that the Pattersons engaged in willful and wanton misconduct by negligently installing the electrical wiring near water and in failing to repair the wiring adequately after prior notice of a defect.

(7) The recreational-defense statutes [Ark. Code Ann. § 18-11-301 to 18-11-307 (1987 & Supp. 1995)], do not provide a defense for the Pattersons.

(8) The Pattersons owed a duty to others based on their implied agreement with AP&L to maintain the boat dock in a safe condition.

■ We have summarized our standard of review for summary judgment many times. For example, in *Brumley v. Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995), we stated:

> Summary judgment is a remedy that should be granted only when it is clear that there is no genuine issue of material fact to be litigated. [Citation omitted.] The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed in a light most favorable to the party resisting the motion. Any doubts and inferences must be resolved against the moving party. [Citations omitted.] The burden in a summary judgment proceeding is on the moving party and cannot be shifted when there is no offer of proof on a controverted issue. [Citation omitted.] When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing genuine issue as to a material fact. [Citation omitted.]

*Brumley*, 320 Ark. at 315, 896 S.W.2d at 863, *quoting Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994).

We have further stated that summary judgment should not be granted when reasonable minds could differ as to the conclusions that can be drawn from the facts presented. *Craig v. Taylor*, 323 Ark. 363, 915 S.W.2d 257 (1996); *Schmidt v. Gibbs*, 305 Ark. 383, 807 S.W.2d 928 (1991); *Lee v. Doe*, 274 Ark. 467, 626 S.W.2d 353 (1981).

We agree with Shackelford that a disputed issue of fact remains to be decided as to whether James received the fatal charge before he reached the boat dock. The Pattersons contended in their brief and at oral argument that the evidence is conclusive that James reached the boat dock. They refer in particular to a police report by Lieutenant Larry Selig of the Garland County Sheriff's Department, who was told by another police officer who retrieved James's body that his arms were looped around a metal post at the end of the boat dock. The Pattersons further assert that James had rust on his hands, arms, face, and clothes and that his body, according to two of the boys, was found at the end of the boat dock. Hence, they urge that James's contact with the boat dock is an issue where reasonable minds cannot differ, and it is appropriately resolved as a matter of law. *See, e.g., Tyson Foods, Inc. v. Adams*, 326 Ark. 300, 930 S.W.2d 374 (1996); *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996); *Brunt v. Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994).

Shackelford vigorously objects to the trial court's consideration of Lieutenant Selig's police report because it was not made under oath, it contained hearsay, and it was not timely presented. We believe that the police report, as presented, had dubious probative value. But even if the trial court appropriately considered the police report, we conclude that a fact question still remains as to (a) whether James received the fatal electric shock before he reached the boat dock, or (b) whether the shock in the water coupled with the shock upon touching the boat dock resulted in his demise, or (c) whether he died solely from the shock experienced upon touching the boat dock.

There is certainly evidence that James, who may well have been fatigued by the swim to shore in his clothes, received a shock in the water. There is proof that the boys felt the electricity

in the water 10 to 12 feet in front of the boat dock. Thomas James McDaniel stated that the electricity pulled energy from him. Larry Wayne Kennedy saw the wire looped into the water. Shackelford's expert witness, Austin Bollen, opined that the electricity leaked into the water by the defective cable was sufficient to cause a person's death. No contravening affidavit or proof was submitted by the Pattersons in response to Bollen's affidavit. Resolution of where James received the fatal shock is critical because it goes to his status with respect to the Pattersons and what duty of care was owed. Hence, we conclude that where James received the fatal electric shock was a material question of fact for the jury to resolve. Ark. R. Civ. P. 56(c).

Shackelford further argues that even if James did reach the boat dock and received the electric shock as a consequence, this brings into play other fact questions. For example, she contends that the Pattersons were not persons to whom an owner or occupant defense applied because of their mere possessory interest in the boat dock and, in addition, that James's presence at the boat dock was privileged because he was there only to save himself. *See* Restatement (Second) of Torts § 197 (1965). According to Shackelford, the privilege of necessity made James a licensee. Due to our holding that a material issue of fact remains to be resolved regarding where the fatal shock was received, we find it unnecessary to address these other issues which undoubtedly will be developed in the trial court.

We reverse and remand the matter to the trial court for further proceedings.