ST. PAUL FIRE & MARINE INS. CO. *v.* FIRST BANK OF ARKANSAS, Personal Representative of the Estate of Cody Patrick Lane, Deceased, and Steven Frank Seitz, Deceased

99-1021                                    20 S.W.3d 372

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*William Mills*, Judge;

*Friday, Eldredge & Clark*, by: *Donald H. Bacon* and *Robert S. Shafer*, for appellant.

*Boyett & Morgan, P.A.*, by: *Comer Boyett*, for appellee.

RAY THORNTON, Justice. Appellant St. Paul Fire and Marine Insurance Company brings this appeal of the decision of the White County Circuit Court awarding First Bank of Arkansas satisfaction of a judgment against an alleged insured of St. Paul on the grounds that the automobile liability policy in question was in force and effect at the time of the accident giving rise to the claim. Because we have determined that the trial court correctly found that the policy had not been canceled prior to the accident, we affirm on the appeal. The cross-appeal of First Bank is affirmed as well.

Both parties having waived a jury, the case went before the trial judge on stipulated facts. The parties agree that appellant issued a policy of garage liability insurance to Conway Auto

Exchange, Inc., effective April 17, 1995, through April 17, 1996. The insurance policy was purchased by Terry Kenyon, president of Conway Auto, through his agent, the Robinson-Adams Insurance Agency in Birmingham, Alabama. The policy provided coverage for automobiles licensed to Conway Auto. Kenyon called Carl Warren, an employee of Robinson-Adams, to request cancellation of the Conway Auto policy, suggesting an effective date for cancellation of June 16, 1995. The policy provided the following rules with regard to cancellation: "To cancel, the first named insured must deliver the policy or the part to be canceled to any of our authorized agents. If this isn't possible notify us by mail and include the date coverage is to end. We'll refund the unused premium . . . ."

In a letter dated June 28, 1995, Warren wrote to Kenyon that he had "been successful in talking St. Paul into giving us *pro rata* cancellation on Conway's policy . . . we will owe you a small refund *once the cancellation is processed*. . . . Please sign the enclosed Cancellation Release Form and return it to me as soon as possible" [Emphasis added]. Accompanying this letter was a document entitled "Cancellation Request/Policy Release."

Sometime after June 28, 1995, the cancellation and release form was signed by Kenyon, as president of Conway Auto, witnessed by his wife Rhonda, and mailed to Warren. The handwritten date on each of Terry and Rhonda Kenyon's signatures was backdated to June 16, 1995. The executed release form was received by Warren on July 6, 1995, and then mailed to St. Paul, where it was received on July 10, 1995. In August, St. Paul returned to Kenyon a check for the amount of the unearned premium. However, on July 4, 1995, Terry Kenyon was involved in an automobile collision resulting in the deaths of Cody Lane Patrick, an infant, and Steven Frank Seitz. At the time of the accident, Kenyon was legally drunk and driving an automobile licensed to Conway Auto, en route from a party with business guests.

Appellee First Bank of Arkansas, acting as representative of the estates of Patrick and Seitz, brought an action for damages against Kenyon and Conway Auto. Conway Auto made a coverage demand upon St. Paul, which was refused on the grounds that the policy had been canceled at the insured's request as of June 16, 1995. First Bank ultimately obtained a judgment against Terry

Kenyon and Conway Auto, jointly and severally, in the amount of $1,425,000, including $1 million in punitive damages. First Bank, acting as subrogee of Conway Auto, then filed this direct action against St. Paul, alleging that the Conway Auto policy was in effect on July 4, 1995, and seeking satisfaction of the judgment from the damages action. First Bank also sought attorney's fees and award of a twelve percent penalty pursuant to statute. St. Paul denied the material allegations of the complaint and asserted that the Conway Auto policy had been canceled by the insured prior to July 4, 1995.

The circuit court entered judgment in favor of First Bank for $1,212,500, on the grounds that "the policy was not canceled [because] the request by the insured had not been received by the insurer at the time of the claim." The circuit court did not award attorney's fees or the statutory penalty. From that judgment in favor of First Bank, St. Paul brings this appeal. First Bank cross-appeals from the denial of its request for attorney's fees and statutory penalty.

■ St. Paul first contends on appeal that Conway Auto's policy was canceled not later than June 28, 1995, relying upon Warren's letter to Kenyon of that date. St. Paul argues that Conway Auto's notice of cancellation as of June 16th was clear and unequivocal and was communicated to St. Paul by June 28, 1995. St. Paul relies upon *American States Ins. Co. v. Southern Guaranty Ins. Co.*, 53 Ark. App. 84, 919 S.W.2d 221 (1996) (*citing Yant v. Bowker*) 248 Ark. 824, 454 S.W.2d 84 (1970)). We agree that the principle articulated in *Yant* is a correct statement of the law: that there must be an actual notice of cancellation within the meaning of the policy, unequivocal in its form. The mere intention to cancel will not be sufficient without some overt act giving the company notice that the contract is at an end. *Id.* We do not find *American States* to be persuasive on the point at issue in this case, however, because in *American States* there was no showing of policy language outlining the requirements for cancellation.

St. Paul argues that the policy was terminated by mutual assent of both parties before Warren's letter to Kenyon on June 28, 1995. The insurance contract, drafted by St. Paul, requires either surrender of the policy, or, in the alternative, written notice mailed to them of the intent to cancel. Because Kenyon did not or could not surrender the policy, he was instructed to execute a "Cancellation

Request/Policy Release" form, which he received from Warren, and that he would be entitled to a small refund "*once the cancellation was processed.*" On this form was typed "6/16/95" for "effective date of cancellation" and offered the choice of two forms: "Cancellation Request (Policy attached)" or "Policy Release (Policy not attached)." "Policy release" was checked with an "x." Under the release statement, the signer agreed that: "The above-referenced policy is lost, destroyed, or being retained. No claims of any type will be made against the Insurance Company under this policy for losses which occur after the date of cancellation shown above. Any premium adjustment will be made in accordance with the terms and conditions of the policy." As for the reason for the cancellation, it was noted: "Request of Insured."

Warren's letter demonstrates that St. Paul had expressed a willingness to terminate the coverage but insisted upon Kenyon's providing the cancellation and release form before the cancellation would be processed. It is clear that St. Paul insisted upon compliance with the written notice provisions of the policy, and did not enter into a termination by mutual agreement before the written notice and release was received by them. We note that on June 30, 1995, St. Paul was still treating the policy as effective, as shown by a statement sent to Conway Auto including charges for coverage effective July 17, 1995.

With regard to the question when the written notice of termination was given by Kenyon, St. Paul attempts to characterize this issue as an implication of the "mailbox rule," urging that the issue to be resolved is whether the written cancellation is effective upon mailing by the insured, as St. Paul contends, or upon receipt by the insurer. The policy language provides that the insured may cancel the policy by delivering the policy to the insurance company or their authorized agent, or, if that is not possible, "notify us by mail and include the date coverage is to end." Kenyon mailed the cancellation and release form to his agent, Warren, sometime after June 28, 1995, and Warren received it on July 6, 1995. He then forwarded the cancellation and release form to St. Paul on that date. It is significant that St. Paul argued both in its Response to Interrogatories and its brief to this court that Warren was without authority to act on their behalf, and characterized Warren, and the Robinson-Adams Agency, as the agents of Kenyon. The form was not mailed to St. Paul by Warren until two days after the accident

giving rise to the claim, after the rights of Lane and Seitz had attached. Cancellation operates prospectively only, and a request for cancellation communicated to the company after the loss would not be effective to absolve the company from liability already accrued. *Mann v. Charter Oak Fire Ins. Co.*, 196 F. Supp. 604 (E.D. Ark. 1961), *aff'd.* 304 F.2d 166 (8th Cir. 1962)(*citing* 45 C.J.S. *Insurance* § 459). The rights of the injured parties attached at the time of the accident, and rescission of a policy retroactively to an earlier date may only be accomplished with the consent of the insured policy owner and any third parties in whom rights may have vested. *See Douglass v. Nationwide Mut. Ins. Co.*, 323 Ark. 105, 913 S.W.2d 277 (1996). Because Warren did not mail the notice to St. Paul until after the accident on July 4, 1995, the issue of whether the notice of termination and release was effective upon being placed in the mail by Warren, or upon receipt by St. Paul, is irrelevant to a resolution of this case. Both events occurred after the accident.

On cross-appeal, First Bank urges that the trial court erred in failing to award attorney's fees and a statutory twelve percent assessment against St. Paul for failure to pay the loss within the time specified, as provided in Ark. Code Ann. § 23-79-208 (Repl. 1999). The order entered by the trial court does not reflect that First Bank obtained a ruling on this point from the trial court. The burden of obtaining a ruling on this issue was on First Bank, and the failure to do so, leaving the issue unresolved, operated as a waiver of the argument on appeal. Brumley v. Naples 320 Ark. 310, 896 S.W.2d 860 (1995). For this reason, we affirm the trial court on cross-appeal as well.

Affirmed.

BROWN, J., not participating.